IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

GENESIS PARTNERS, LIMITED PARTNERSHIP,

        Plaintiff,

v.                            CIVIL ACTION NO. 1:24-CV-106
                                   (KLEEH)

CITY OF BRIDGEPORT, WEST VIRGINIA,
and G. ANDREW LANG,

        Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 17] AND DEFENDANTS' MOTION
FOR CONSIDERATION OF SUPPLEMENTAL EXHIBIT [ECF NO. 25]**

Pending before the Court are *Plaintiff's Motion for Summary Judgment* [ECF No. 17] and Defendants' *Motion for Consideration of Supplemental Exhibit* [ECF No. 25]. For the reasons stated therein, the Motions [ECF Nos. 17, 25] are **GRANTED**.

## I.    RELEVANT PROCEDURAL BACKGROUND

Plaintiff, Genesis Partners, Limited Partnership ("Genesis" or "Plaintiff"), filed a single Count Complaint in this Court on November 18, 2024, seeking declaratory judgment.  ECF No. 1. The Defendants City of Bridgeport, West Virginia (the "City") and G. Andrew Lang "Lang) (collectively "Defendants") filed their Answer [ECF No. 24] on October 16, 2025. Genesis filed the subject Motion for Summary Judgment on May 1, 2025, along with supporting memorandum. ECF Nos. 17, 18. Defendants responded in opposition to summary judgment on May 22, 2025 [ECF No. 19] and Plaintiff replied

in further support of its Motion on June 5, 2025. ECF No. 20. Additionally, on October 20, 2025, Defendants filed a *Motion for Consideration of Supplemental Exhibit* [ECF No. 25], which seeks to attach a Memorandum of Understanding ("MOU") [ECF No. 25-1, Ex. A] to the summary judgment record. Plaintiff opposes the consideration of the MOU on procedural and substantive grounds. ECF No. 26. The Court heard oral argument on the subject motions on January 6, 2026.

## II.  FACTUAL BACKROUND

The factual background in this case is largely undisputed. In 2002, the West Virginia Legislature passed the West Virginia Tax Increment Financing Act ("TIF Act").  ECF No. 17 at pp. 3-4; ECF No. 19 at p. 1.  The TIF Act governs the use of tax increment financing, which is a method of public funding that uses future increases in property tax revenue to fund public infrastructure projects.  ECF No. 17 at p. 3. Specifically, the TIF Act authorizes county commissions and municipal governments to create development or redevelopment districts ("TIF districts") to stimulate economic growth. Id.; W. Va. Code § 7-11B-1 et seq. Under the TIF Act, a TIF district requires the formal consent of the municipality it sits in before it can be established.  Id.; ECF No. 19 at p. 2.

On March 28, 2005, the City of Bridgeport and Genesis Partners, Limited Partnership entered a Memorandum of Understanding ("MOU"). Ex. 25-1. The MOU incorporates three

2

exhibits: A – TIF District boundaries; B – Charles Pointe Illustrative Plan[1]; and C – the City's Resolution (ECF No. 19-1). Id. In the MOU, the City agreed to annex property in its corporate limits prior-to or contemporaneously with Harrison County's issuance of TIF bond. ECF No. 19-1. The City further agreed therein to consent to the creation of the TIF district ("District No. 2") and the MOU constituted the entire agreement. Id.

On March 31, 2005, pursuant to the TIF Act, the Harrison County Commission authorized the creation of a TIF district in Bridgeport, West Virginia, with the city's prior consent. ECF No. 18 at p. 5; ECF No. 19-1 ("Resolution").  District No. 2's purpose was to "benefit the City and its residents by facilitating the orderly development and economic stability of the City."  ECF No. 19-1. Genesis, a registered West Virginia Limited Partnership, was responsible for developing District No. 2.  ECF No. 18 at p. 5; ECF. No. 25-1 ("MOU").

On February 27, 2023, the West Virginia Legislature passed an amendment to the TIF Act that authorized up to a fifteen-year extension for TIF districts established before December 31, 2020, without consent of the municipality (hereinafter "H.B. 3340" or "2023 Amendments").  ECF No. 18 at pp. 4-5; ECF No. 19 at pp 1-3;

---

[1] Neither party introduced Ex. B, thus the Court assumes the Charles Pointe Illustrative Plan does not create a dispute of material fact or further either parties' position.

2023 West Virginia House Bill No. 3340, West Virginia Eighty-Sixth Legislature - Regular Session, 2023 ("H.B. 3340).[2]  A previous amendment to the TIF Act allowed for up-to-five-year term extensions with the consent of the municipality. ECF No. 18 at p. 4; See W. Va. Code § 7-11B-7(l) (2021). On August 20, 2024, the West Virginia Department of Economic Development approved a fifteen-year extension for District No. 2.  ECF No. 18 at p. 6; ECF No. 17-5; ECF No. 17-6. The City's consent to the extension was not requested. ECF No. 18 at p. 6; ECF No. 19 at pp. 2-3.

Since the approval of District No. 2's extension, Defendants have threatened litigation and advertised their intent to

---

[2] The summary of H.B. 3340 provides:

> AN ACT to amend and reenact §7-11B-3, §7-11B-7, §7-11B-8, §7-11B-9, and §7-11B-10 of the Code of West Virginia, 1931, as amended, all relating generally to property tax increment financing; amending definition of tax increment financing; modifying the existing authorization for a county commission or municipality to extend the termination time of certain districts; providing for certain notice to other levying bodies prior to a new project plan or project plan amendment for certain property tax districts being considered for approval; and eliminating certain approval of other levying bodies prior to amendment of an existing district by the county commission or governing body of the municipality making the amendment.

challenge the constitutionality of the TIF Act amendment.  ECF No. 18 at pp. 6-7; ECF Nos. 17-7, 17-8, 17-9.

Plaintiff brings the following claim:

> Count One: Declaratory Judgment regarding the validity of the West Virginia TIF Act under Article I, Section 10, Clause 1 of the United States Constitution and Article III, Section 4 of the West Virginia Constitution.

Plaintiff asks the Court to "declare that the 15-year extension of Development District No. 2 does not impinge on any contract or agreement with the City of Bridgeport and therefore does not violate the Contracts Clause of the West Virginia Constitution or the United States Constitution." Id. at p. 12.

Defendants filed suit in the Circuit Court of Kanawha County, West Virginia against Michael R. Graney, in his official capacity as Executive Director of the West Virginia Department of Economic Development, asking, among other things, that the Court declare the fifteen-year extension to TIF districts without the consent of the municipality in which the TIF district is situated is unconstitutional under West Virginia law. ECF No. 11-1.

### III. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of

5

'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof."  Id. at 317–18.  Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The Court views the evidence in the light most favorable to the non-moving party and draws any reasonable inferences in the non-moving party's favor. See Fed. R. Civ. P. 56(a); see Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

## IV.  DISCUSSION

The Court must first consider Defendants' motion to supplement the record before ruling on the pending summary judgment motion. Rule 56(e) of the Federal Rules of Civil Procedure "allows the trial court in its discretion to receive supplemental material in support of or in opposition to a motion for summary judgment before ruling on the motion." Adardour v. Am. Settlements Inc., 2009 WL 2242635, at *2 (E.D. Va. July 24, 2009) (citing RGI, Inc. v. Unified Indus., Inc., 963 F.2d 658, 662 (4th Cir. 1992); Fed.

6

R. Civ. P. 56(e). For reasons appearing to the Court, Defendants' *Motion for Consideration of Supplemental Exhibit* [ECF No. 25] is **GRANTED**. The Court will consider as part of the summary judgment record the minutes for a March 28, 2005 meeting of the Bridgeport City Council and the MOU. ECF No. 25-1.

Plaintiff argues it is entitled to summary judgment and declaratory judgment on several grounds. Genesis contends that (1) the City lacks standing to invoke the Contract Clause against the State of West Virginia; (2) there is no contract between the City and Genesis; and (3) even if a contract existed, the contract is not impaired by the TIF Act, as amended by H.B. 3340. ECF No. 18.

As an initial matter, the Court assumes without deciding that the MOU constitutes a contract between the City and Genesis. See United States v. Norman, 935 F.3d 232, 241 (4th Cir. 2019).[3]

### A. Genesis is Granted Summary Judgment Because No Contract Was Impaired by the 2023 Amendments to the TIF Act.

The Court finds that Plaintiff is entitled to summary judgment because assuming *arguendo* that the MOU constitutes a contract between Genesis and the City, the contract was not impaired by H.B. 3340.

---

[3] As the United States Supreme Court and the Fourth Circuit have explained, "courts often decide 'particular legal issues while assuming without deciding the validity of antecedent propositions, and such assumptions ... are not binding in future cases that directly raise the questions.'" Norman, 935 F.3d at 241 (quoting United States v. Verdugo-Urquidez, 494 U.S. 259, 272 (1990)).

The Contract Clause of the Constitution of the United States provides, "No State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. CONST. art. 1, § 10, cl. 1. 1. In assessing the West Virginia constitutional provision prohibiting any "law impairing the obligation of a contract," courts have "generally accepted the United States Supreme Court's interpretation of the similar provision contained in Article I, Section 10, Clause 1 of the United States Constitution." Syl. Pt 1, Shell v. Metro. Life Ins. Co., 380 S.E.2d 183, 184 (1989); W.Va. Const. art. III, § 4. "The Clause 'is not interpreted "absolutely to prohibit the impairment of ... government contracts."' Air Evac EMS, Inc. v. Cheatham, 260 F. Supp. 3d 628, 646–47 (S.D.W. Va. 2017) (quoting Catawba Indian Tribe v. City of Rock Hill, 501 F.3d 368, 371 (4th Cir. 2007) (internal citations omitted). Rather, to prevail on a claim under the Contract Clause, the "claimant must show (1) contractual impairment, (2) that is substantial, and (3) not a legitimate exercise of state power." Id.; City of Charleston v. Pub. Serv. Comm'n, 57 F.3d 385, 391 (4th Cir. 1995)).

Genesis argues, among other things, that the MOU is not impaired by the extension of District No. 2. ECF No. 26. For instance, the MOU does not provide for a term or length of District No. 2 or the term or duration of any bonds that would be issued. Id. at p. 4. Because the parties did not agree in the MOU regarding District No. 2's length, including the possibility of extension,

8

or the duration of the bonds, Genesis contends that H.B. 3340 does not undermine the bargain, frustrate reasonable expectations, or prevent a party from safeguarding its rights. ECF No. 18 at p. 12. Rather, Genesis argues that Defendants have no vested contractual rights because the MOU never provided for an ongoing veto over extensions and any entitlement to ad valorem taxes arose by statute not the MOU. Id. at p. 13.

Even if Defendants could evidence a substantial impairment to the contract, Genesis argues the City's claim would still fail as a matter of law because H.B. 3340 addressed the legitimate public purpose of extending certain TIF Districts to mitigate setbacks from the Great Recession and COVID-19. Id. at p. 14. Thus, it asserts that the amendment to the TIF Act was a reasonable and appropriate response to a public need. Id.

In contrast, Defendants argue, among other things, that the City can satisfy the substantial impairment test because Genesis was issued TIF bonds to finance the project based upon the use of the deferred ad valorem taxes, which would have been paid to the City. ECF No. 19 at p. 15. Defendants argue that the 2023 amendment to the TIF Act qualifies as more than a minimal alteration to the MOU because it allowed for the TIF bonds and district to be extended by 15 years and removed the provision requiring the City's consent. Id. Further, Defendants assert that Genesis's economic projections support that the impairment is substantial, noting the

9

reported Certified Appraisal Value for District No. 2 estimates over $2 billion dollars in property value growth and that Defendants will not receive the TIF revenues for an additional 15 years. Id.

Defendants further assert that H.B. 3340 is unreasonable and not tailored to serve public purpose because it singles out for special treatment only TIF Districts created prior to December 31, 2020. Id. at p. 17. Defendants further dispute Plaintiff's contention that the purpose of the 2023 Amendment was to respond to COVID—19 and the Great Recession. Id. at pp. 17-18. Accordingly, Defendants contend that they contracted in 2005 for a 30-year term for District No. 2 and that any extension would require the City's consent.

In Genesis's reply briefing, it further argues that Defendants cannot point to any record which guarantees the City the right to receive increased tax revenues after the expiration of the district's original term nor any agreement that guarantees the City a say in changes to District No. 2's term or duration. ECF No. 20 at p. 8. Genesis further reiterates the State's interest in developing or revitalizing underdeveloped areas and extending the useful life of public infrastructure projects in the wake of the Great Recession and COVID-19 pandemic. Id. at p. 9.

Here, the Court finds that assuming arguendo that the MOU constitutes a contract between Genesis and the City, H.B. 3340

10

(the 2023 Amendments) does not impair the agreement. The Court agrees with the City that the March 28, 2005 Resolution is part of the parties' agreement because it was formally incorporated into the MOU. See ECF No. 25-1. However, this does not aid Defendants' argument because neither the MOU nor the Resolution place a term or duration on the length of District No. 2 or the length of the TIF Bonds. There is no reference to a thirty-year term or a promise that it would seek the City's consent to extend such term. Further, the MOU does not provide a deadline for which the City would receive the deferred tax proceeds.

Additionally, Defendants cannot incorporate additional records or communications into the MOU, beyond those formally incorporated, because Section 8 of the MOU contains an integration clause. ECF No. 25-1 at p. 10 ("This MOU constitutes the entire understanding between the City and the Developer with respect to the matters addressed herein, and may be amended only in a subsequent writing executed by both parties."). Thus, the MOU is the only arguable contract between Genesis and the City.

Furthermore, to the extent the Defendants contend that the 2002 TIF Act (W. Va. Code § 7-11B-1 et seq.), is incorporated into the MOU, the MOU only provides that the TIF Act requires a municipality's formal consent to establish a TIF District. Section 7-11B-7(h) of the TIF Act still provides that a municipality must give formal consent before a development or redevelopment district

is established. W. Va. Code § 7-11B-7(h). Rather, H.B. 3440 amended the TIF Act to extend the termination date for existing TIF districts. Id. at § 7-11B-10(a). Thus, the MOU is not impaired, nor substantially impaired, by the 2023 Amendments because the parties only agreed that the City's consent to the establishment of District No. 2 was necessary – not its termination or extension. Thus, H.B. 3340 does not impair the terms of the MOU and Genesis is entitled to summary judgment on this ground.

Because this issue is dispositive, the Court declines to address Plaintiff's remaining arguments in favor of summary judgment.

## V.    CONCLUSION

For the reasons stated herein, *Plaintiff's Motion for Summary Judgment* [ECF No. 17] and Defendants' *Motion for Consideration of Supplemental Exhibit* [ECF No. 25] are **GRANTED**. The Court hereby **DECLARES** that the 15-year extension of Development District No. 2 does not impair the Memorandum of Understanding agreement with the City of Bridgeport and therefore the 2023 Amendments to the TIF Act do not violate the Contracts Clause of the West Virginia Constitution or the United States Constitution, in this instance.

Any remaining pending motions or deadlines are **TERMINATED**. This action is thus **STRICKEN** from the Court's active docket and the Clerk is **DIRECTED** to enter judgment in favor of Plaintiff, Genesis Partners, Limited Partnership.

12

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record by the CM/ECF system.

**DATED:**  March 30, 2026

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA

13